McKAY, Circuit Judge,
concurring:
I join the court’s Opinion but add some observations of my own.
It falls to the BLM to protect wild horses under the Wild Horses Act. It has broad discretion in applying its expertise in carrying out that mission. The text of the statute, in some regards, could not be more clear: To remove wild horses from public land, the BLM must first determine “that an overpopulation exists on a given area of the public lands and that action is necessary to remove excess animals.” Then, and only then, can the BLM “remove excess animals from the range so as to achieve appropriate management levels.” In most parts of the country, the *1192 BLM can readily comply with these dual statutory mandates. As applied to the checkerboard region of Wyoming, however, the statutory scheme falls apart. The BLM tried in good faith to use its broad discretion and expertise to carry out this mandate. Its methodology was to treat public lands as private lands. But, though the BLM’s solution to the problem presented by the checkerboard may seem reasonable, it is not in accordance with the statute.
The problem that keeps bringing this matter to the court arises from the one section of the act which is clear, unmistakable, mandatory, and non-discretionary: Section 4. Under this section, private landowners have the absolute right to exclude wild horses and burros from their land. If they do not consent, then by definition, their lands with their corresponding forage may not be included in the decision about herd size or at the primary decision level which is the designation of herd management areas (HMAs). It seems to me that the only way the BLM can ultimately lawfully achieve its Section 3 duty to maintain wild herds and prevent destruction of viability caused by over grazing on public lands is to go back to step one and make appropriate judgments by redetermining the HMAs without the non-permissive use of private lands.